THE STATE, EX REL. ROSS, *v.* INDUSTRIAL COMMISSION OF OHIO.

(No. 71-46—Decided August 17, 1971.)

*Mr. Chester T. Freeman,* for relator.

*Mr. William J. Brown,* attorney general, and *Mr. R. Peterson Chalfant,* for respondent.

REILLY, J. This is a mandamus action. Relator seeks a writ ordering "that the respondent process the application for the increase in the percentage of permanent partial disability filed September 1, 1970, and that pursuant thereto he either be awarded the 10% increase in accordance with the medical proof on file, or that he be examined by a competent physician specializing in the area of orthopedics for the purpose of re-evaluating his permanent partial disability and thereafter an order be made giving consideration to all facts and proof on file awarding to

relator such additional compensation, if any, to which he is entitled * * *.''

The file of respondent concerning relator's claim has been stipulated as the facts in this case. Relator was injured on June 7, 1965, in the course of his employment. He was employed by the Springfield Aluminum Division of Holophane Company, Inc. A claim was allowed for an injury to the low back. He was initially awarded temporary total disability benefits through April 28, 1969.

An application for determination of percentage of permanent partial disability was filed for relator on January 6, 1970. Relator was examined by respondent's medical department on March 5, 1970. The examining physician found a permanent partial disability between eight and ten percent. Whereupon after hearing, relator was awarded ten percent permanent partial disability benefits.

Relator suffered a recurrence of his condition. An application was filed to reactivate his claim on July 6, 1970. The physician, in this application, showed a diagnosis of "lumbo-sacral disease" and a period of temporary total disability from April 21, 1970, through April 29, 1970. Further, he gave his professional opinion as to an approximately 20 percent degree of permanent partial disability. The deputy administrator of the Bureau of Workmen's Compensation made a decision and order awarding temporary total disability benefits for April 21, 1970, to April 26, 1970.

Subsequently, on September 1, 1970, an application for an increase in the percentage of permanent partial disability was filed for relator. The following comment was made at the bottom of the form:

"Attention is specifically directed to the allowed C-85-A now on file, filed July 6, 1970. It was completed by an orthopedic specialist in the city of Springfield, stating 20% permanent partial disability. To date the claimant has only been paid 10%. The additional award is respectfully requested."

Thereafter, respondent made the following order:

"That the application for increase in percentage of

permanent partial disability filed September 1, 1970 be dismissed for the reason that medical proof was not filed as required by Section 4123.57 R. C., as amended December 11, 1967.''

Counsel for relator filed an application for reconsideration, and, after hearing, the following order was entered by respondent:

''That the finding and order of the commission dated October 5, 1970, be affirmed and that the claimant's application for reconsideration filed October 15, 1970, be denied.''

The essential issue before this court is whether respondent abused its discretion in determining that a period of temporary total disability did not represent substantial evidence of new and changed circumstances. R. C. 4123.57 (B), in pertinent part, provides as follows:

''* * * No application for subsequent percentage determinations on the same claim for injury or occupational disease shall be accepted for review by the commission unless supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination.''

There is a material difference between temporary total disability and permanent partial disability.

''* * * Temporary total disability benefits are to compensate for a loss of earning; the employe cannot work because of his injury and has lost his wages. * * *'' Young, Workmen's Compensation Law of Ohio, 96, Benefits, Section 7.8.

''An employe can receive a percentage of permanent partial disability award even though he is working at the time of the determination and is earning a higher wage than he did when he was injured. This benefit is not keyed to loss as are the other types of compensation. It is paid because the employe has a permanent physical disability as the result of his injury. The percentage award bears a closer resemblance to damages than it does to compensation. * * *'' Id., 107, Section 7.22.

Moreover, the Supreme Court has recently considered the distinction between permanent partial disability and

other types such as temporary total in the case of *Fleischman* v. *Flowers* (1971), 25 Ohio St. 2d 131, at page 134 as follows:

"* * * Essentially, as observed by this court in *State, ex rel. Latino,* v. *Indus. Comm.* (1968), 13 Ohio St. 2d 103, permanent partial compensation under paragraph (B), like that provided for under paragraph (C) (loss of a member of the body), is an exception to the general rule that sections of the Ohio Workmen's Compensation Law 'are aimed exclusively at compensating for impairment of earning capacity,' and bears a closer resemblance to damages than it does to compensation for loss of employment. See, also, Young, Workmen's Compensation Law of Ohio, Section 7.22, quoted with approval in *Latino.* For an analysis of the nature of the payment under R. C. 4123.57(C), see *State, ex rel. Dudley,* v. *Indus. Comm.* (1939), 135 Ohio St. 121."

The court further wrote, at page 137:

"The happenstance of such absence from employment at some prior time has no logical relationship to the question of the extent of claimant's present permanent partial disability, or any relationship to the original injury. It does not establish minimum limits as to the degree of disability necessary for payment. It is not akin to a statute of limitations. Any person who, by the nature of his employment, is able to return to at least some work within seven days is precluded from even having his application *considered*, although the extent or degree of his permanent partial disability may be far in excess of that suffered by another employee who happened to be totally absent from employment for more than one week, and even though there be no question as to the relationship of the disability to the injury."

Thus, the two types of compensation are different. Section 4123.57 (B) concerns permanent partial disability. The statutory words, "substantial evidence of new and changed circumstances" relate to that concept. This court emphasized the basic principle in the case of *State, ex rel. Penix,* v. *Indus. Comm.* (No. 9894), decided April 13, 1971. Judge Whiteside wrote as follows:

"R. C. 4123.57 requires that such new and changed circumstances must have developed since the hearing upon the last determination of partial disability. This hearing apparently was held on August 28, 1968, with respect to relator. At that time, the evidence indicated, and the respondent found that relator's nature of injury was 'lumbosacral sprain.' The evidence in the file apparently filed in support of applications for the most recent temporary total disability and medical payments now indicate that relator's injury consists of 'herniated intervertebral disc L4-5 and L5-S1' and that an operation consisting of a laminectomy and excision of the herniated intervertebral disc was performed upon relator on September 16, 1969. In its order awarding compensation for medical expenses and temporary total disability, with regard to the disc problem and operation, respondent found that relator 'has had a continuance of his lumbo-sacral back disability, which required his being off work for a further period of temporary total disability, and required a laminectomy.'

"We find that the change in a person's physical condition from one of 'lumbo-sacral sprain' to 'herniated intervertebral disc' requiring a laminectomy operation constitutes new and changed circumstances within the contemplation of R. C. 4123.57."

This case is clearly distinguishable. Relator filed an application on June 13, 1969, to reactivate his claim. Dr. R. C. Link, the attending physician, wrote a diagnosis, "lumbro-sacral disease" (chronic sprain), on the back of this application. April 8, 1970, relator was awarded ten percent permanent partial disability resulting from an examination by respondent's doctor on March 5, 1970. Subsequently, on July 6, 1970, relator filed an application to reactivate his claim. Dr. Link gave the same diagnosis.

This case does not show substantial evidence of changed circumstances as existed in the *Penix* case, *supra*. Relator's back condition, as diagnosed by his attending physician, is not different than when he was awarded the initial ten percent permanent partial disability. Dr. Link wrote a diagnosis "lumbo sacral disease" in June, 1969, as well as June, 1970. Relator's back condition was diag-

274

nosed the same after the hearing upon the original determination for partial disability as it was diagnosed before this hearing. Manifestly, this differs materially from a change of "lumbo-sacral sprain" to "herniated intervertebral disc," in the *Penix* case.

Dr. Link wrote in the application for an increase in permanent partial disability that relator had "a 20% permanent partial disability." In the application dated June 13, 1969, Dr. Link previously estimated the same percentage of permanent partial disability. He stated that relator had "twenty percent partial permanent at the moment."

Respondent's physician, Dr. B. C. Diefenback, wrote that respondent had a "permanent partial disability of not over 8 or 10%." It is within respondent's discretion to choose its own doctor. *State, ex rel. Coen,* v. *Indus. Comm.* (1933), 126 Ohio St. 550; *State, ex rel. Marshall,* v. *Keller* (1968), 15 Ohio St. 2d 203; *State, ex rel. Szekely,* v. *Indus. Comm.* (1968), 15 Ohio St. 2d 237. In any event, the 20 percent diagnosis by Dr. Link in June 1970 is a reiteration of his previous position. Consequently, it does not represent evidence of new and changed circumstances. Further, this diagnosis was part of the file at the time respondent examined relator and awarded him ten percent permanent partial disability.

In summary, there must be substantial evidence of new and changed circumstances to comply with statutory requirements. Temporary total disability and permanent partial disability are clearly different. The facts herein are decidedly different from the *Penix* case, *supra.* The application for increase in permanent partial disability is upon the same diagnosis and percentage disability that existed at the time of the hearing upon the original determination. Therefore, there is not substantial. evidence in the file of new and changed circumstances.

Accordingly, the writ is denied.

*Writ denied.*

TROOP, P. J., and WHITESIDE, J., concur.